1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM G. HAMPSMIRE, <br><br>              Plaintiff, <br><br>       vs. <br><br> CITY OF SANTA CRUZ, KEVIN VOGEL in his official capacity as police chief for the CITY OF SANTA CRUZ, PATRICK BAYANI, in his individual and official capacity as a police officer for the CITY OF SANTA CRUZ, and CHRIS VIGIL, in his individual and official capacity as a police officer for the CITY OF SANTA CRUZ, <br><br>              Defendants. | Case No. 11-cv-3408 RMW <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |

This civil rights action arises from the arrest of plaintiff William Hampsmire ("plaintiff") for disturbing the peace while preaching on a public sidewalk in Santa Cruz, California.  Plaintiff and defendants the City of Santa Cruz (the "City"), Officer Kevin Vogel, Officer Patrick Bayani and Officer Chris Vigil (the "Officer Defendants") (collectively "Defendants") have filed cross-motions for partial summary judgment.  For the reasons below, the court: (1) grants plaintiff's motion as to his due process claim, concluding that the municipal ordinance under which he was cited is void for vagueness; (2) denies both motions without prejudice as to plaintiff's claims under the Fourth Amendment and the free speech clause of the First Amendment, except with respect to the City's motion under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), which is granted;

1  (3) denies both motions without prejudice as to plaintiff's state law claims; (4) grants defendants'

2  motion as to plaintiff's free exercise, overbreadth and equal protection claims; and (5) issues a

3  permanent injunction against enforcement of the noise ordinance as currently drafted but grants

4  defendants' motion as to the remainder of plaintiff's claim for injunctive relief.

## I. BACKGROUND

6        Plaintiff is a "preacher of the gospel of Jesus Christ."  Hampshire Decl. ¶ 15.  Based on his

7  interpretation of certain passages in the Bible, plaintiff believes it is his religious duty to spread

8  Jesus' teachings.  *Id.*  Plaintiff does not preach in a "low, conversational volume" because he feels

9  it is more efficient, effective and consistent with the Bible's message to preach to crowds of

10  people, some of whom are more comfortable gathering at a distance.  *Id.* ¶ 16.  He believes that if

11  he were "forced to chase after groups of two or three people to preach in a normal conversational

12  tone," he would be accused of harassment.  *Id.* For at least the last seven years, plaintiff has

13  preached two to four times per week at numerous public locations in California and elsewhere.  *Id.*

14  ¶ 15.

15        On May 30, 2010 at approximately 6 P.M., plaintiff was stationed on a public sidewalk in

16  the downtown business district of Santa Cruz, California.  *Id.* ¶ 2.  He was preaching to "all

17  present, including those across the street."  *Id.* ¶ 3.  Santa Cruz Police Officer Bayani ("Officer

18  Bayani") was dispatched to the vicinity because someone had reported a noise disturbance coming

19  from approximately seventy feet away.  Bayani Decl. ¶ 4.  Police dispatch advised Officer Bayani

20  that the reporting party did not want to sign a citizen's arrest form at that time, but hoped the

21  police could get plaintiff to be quiet.  *Id.*

22        When Officer Bayani arrived in the area, he observed plaintiff holding a sign attached to a

23  long pole and preaching at a "loud volume."  Bayani Decl. ¶ 5; *see also* Pl's Exh. A, ("Video") at

24  1:30-2:30.[1]  Officer Bayani also saw people on the street who appeared to be yelling at plaintiff.

25  Bayani Decl. ¶ 5.  Given the proximity of plaintiff's audience, Officer Bayani "did not think

26

27       [1]  Plaintiff videotaped his encounter with the police and submitted the video along with his

28  motion for summary judgment.

1   [plaintiff] needed to give his presentation that loudly, even if he was trying to reach people across

2   the street, because sound carries very well and echoes in downtown Santa Cruz."  Bayani Decl. ¶

3   5.

4          Officer Bayani asked plaintiff to lower his voice because someone had filed a noise

5   complaint.  Bayani Decl. ¶ 6.  Plaintiff responded that he had an attorney, and that he did not mind

6   suing Officer Bayani or others for violating the First Amendment.  *Id.*; Video at 173, 2:55-3:30.

7   Officer Bayani advised plaintiff that he was not there regarding his freedom of speech, but rather

8   his volume.  Bayani Decl. ¶ 6.  At this time, Officer Bayani noticed that a woman was videotaping

9   the incident.  *Id.*

10         Police dispatch then informed Officer Bayani that the reporting party wanted to sign a

11  formal complaint.  Bayani Decl. ¶ 7.  The reporting party indicated that he worked in a second-

12  floor office approximately seventy feet from plaintiff's location, and that he was unable to work

13  because of the volume of plaintiff's "presentation."  Bayani Decl. ¶ 7.  The reporting party also

14  stated that he had been listening to plaintiff for approximately one hour.  *Id.*  Officer Bayani met

15  with the reporting party in front of his office and was still able to "clearly" hear plaintiff's voice.

16  *Id.*  Officer Bayani did not suggest that the reporting party close his office window, which was

17  open, because it was summertime and the officer did not "know if [the] air conditioning in the

18  building worked or not."  Bayani Depo. at 18-22.

19         The reporting party signed a citation against plaintiff for a violation of Santa Cruz

20  Municipal Code § 9.36.020 (the "noise ordinance").  Bayani Decl. ¶ 8.  Given Officer Bayani's

21  observations of the volume of plaintiff's presentation, the close proximity of a reasonably-sized

22  audience, the fact that sounds travel and echo off of buildings in the downtown corridor, the

23  reporting party's description of a prolonged disturbance, and the fact that plaintiff was not willing

24  to moderate his behavior, Officer Bayani believed there was probable cause to cite plaintiff for

25  violating the noise ordinance.  *Id.*  Officer Bayani did not believe the situation involved a clear and

26  present danger of immediate violence.  Bayani Depo. at 42:9-20.

27         Officer Bayani returned to plaintiff's location to get his identifying information and issue

28  the citation.  Bayani Decl. ¶ 9.  He then asked plaintiff to move to another location so the reporting

3

party would not complain again.  *Id.*  Plaintiff responded that he would move to the other side of

the street.  *Id.*  Officer Bayani told him that would not be reasonable.  *Id.*  At that time, plaintiff,

who was previously "admonish[ed]" by the police for preaching in the same area, believed that

"no matter where I moved, the Santa Cruz police were going to continue to ask me to move

somewhere else or stop preaching."  Hampsmire Decl. ¶¶ 13, 15. [2]

Officer Bayani gave plaintiff the choice of either lowering his volume or moving to

another location.  Bayani Decl. ¶ 10.  Plaintiff refused, stating that "you're going to have to arrest

me for preaching … for my freedom of religion."  Video at 174, 5:14.  Officer Bayani said he

would rather plaintiff move because he did not want to arrest him.  Bayani Decl. ¶ 10.  By this

point, several people had gathered nearby.  Some were taunting plaintiff; others appeared to be

taunting Officer Bayani.  Video at 174, 8:00-10:00.

Plaintiff took out his cell phone and indicated that he was calling his attorney.  Bayani

Decl. ¶ 12.  While on the phone, plaintiff asked Officer Bayani what he would do if plaintiff did

not leave; the officer responded that the reporting party's office was "just right there" and that he

did not want to arrest plaintiff.  Video at 174, 7:40-8:00.  After ending his phone call, plaintiff

took apart the sign he had been holding, gave his belongings to the woman who was videotaping

him and resumed preaching at a "louder volume."  Bayani Decl. ¶ 13; Video at 174, 7:56-10:00.[3]

Several other police officers arrived on the scene.  Video at 174, 7:00-9:00.  Officer Bayani had

not yet formed the opinion that a clear and present danger of immediate violence existed, but the

thought was "in the back of [his] mind."  Bayani Depo. 54:1-5.  Officer Bayani also felt that

plaintiff's behavior "was an attempt to set me or another officer up."  Bayani Decl. ¶ 12.

Officer Bayani then called his supervisor, Sergeant Connor, and advised him of the

situation.  Bayani Decl. ¶ 11.  He informed Sergeant Connor that the crowd appeared to be

---

[2]     According to plaintiff, in 2008, he was preaching on the same corner with a friend who
was cited shortly after complying with a police request to move to a different location.
Hampsmire Decl. ¶ 4.

[3]     It does not appear from the video that plaintiff increased his volume after making the
phone call.

1  becoming "agitated."  *Id.*  Sergeant Connor authorized Officer Bayani to arrest plaintiff for a

2  violation of Cal. Pen. Code § 415(2).  *Id.*

3      Officer Bayani handcuffed plaintiff and escorted him to Officer Vigil's patrol car.  Bayani

4  Decl. ¶ 13.  Officer Bayani met Officer Vigil at the county jail, took custody of plaintiff, and

5  booked him for a violation of Cal. Penal Code § 415(2).  *Id.*  The district attorney declined to

6  prosecute plaintiff, and he was released shortly thereafter.  *See* Dkt. No. 35 at 2.

7                          **II. PROCEDURAL HISTORY**

8      On July 12, 2011, plaintiff filed a complaint against the City of Santa Cruz and Officers

9  Bayani, Vogel[4] and Vigil, alleging violations of the First, Fourth and Fourteenth Amendments,

10  Cal. Civ. Code § 52.1, and a claim for false imprisonment.  *See* Dkt. No. 1 (Compl.).  He seeks

11  damages and an injunction preventing defendants from "interfering with [his] lawful speech or

12  arresting him under similar circumstances."  *Id.* at 6.

13      On July 27, 2012, the parties filed cross-motions for partial summary judgment.  While

14  plaintiff insists that he is asserting an "as-applied" challenge to defendants' enforcement of the

15  noise ordinance and Section 415, some of his arguments regarding the noise ordinance are better

16  construed as a facial attack.  *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)

17  (discussing the difference between facial and as-applied challenges).  Where applicable, the court

18  will consider both.[5]

19                              **III. DISCUSSION**

20  **1.      FIRST AMENDMENT**

21      ─────────────────────
        [4]   Officer Vogel is the chief of the Santa Cruz Police Department.

22
        [5]   Defendants contend that because the allegations in the complaint focus on the officers'
23  conduct, the court should decline to consider any facial infirmities with the noise ordinance.  Dkt.
    No. 28 at 2-3 (citing *Calvi v. Knox County*, 470 F.3d 422, 430-31 (1st Cir. 2006).  The court
24  disagrees.  Unlike *Calvi*, plaintiff's challenge to the constitutionality of the noise ordinance was
    raised in a separate motion for summary judgment, not an opposition motion.  *Compare Calvi*, 470
25  F.3d at 431.  More importantly, the court is not persuaded by defendants' claim that they were
    prejudiced by being "unable to perform as much research as [they] would otherwise deem
26  necessary."  Dkt. No. 29.  Defendants were free to seek additional time to respond to plaintiff's
    motion, and their thorough, well-written brief is more than adequate to allow the court to consider
27  the issues in question.

28

                                          5

**A.     Free Speech Clause**

Plaintiff contends that the noise ordinance and Cal. Pen. Code § 415, as applied to his preaching, infringe his right to free speech.  The noise ordinance reads:

> 9.36.020 UNREASONABLY DISTURBING NOISES
> No person shall make, cause, suffer or permit to be made any noises or sounds (a) which are unreasonably disturbing or physically annoying to people of ordinary sensitiveness or which are so harsh or so prolonged or unnatural or unusual in their use, time or place as to cause physical discomfort to any person, and (b) which are not necessary in connection with an activity which is otherwise lawfully conducted. As used in this section, "lawfully conducted activities" shall include, but not be limited to, any and all activities conducted by the city for public health, safety or welfare purposes.
>
> 9.36.025 PUBLIC HEALTH AND SAFETY
> This chapter shall not apply to refuse collection, recyclable collection or street sweeping activities undertaken by, or pursuant to contract with, the city of Santa Cruz. Similarly, this chapter shall not apply to any other activity undertaken by the city, another governmental agency, or city contractor for public health and safety purposes when, in the judgment of the city or governmental agency, such activity cannot be undertaken effectively or efficiently in compliance with the regulations set forth in this chapter.

Cal. Pen. Code § 415 provides that "[a]ny person shall be punished . . . who maliciously and willfully disturbs another person by loud and unreasonable noise."  Cal. Pen. Code § 415(2). An officer making an arrest under Section 415 based on "loud shouting" must have probable cause to believe that there is a "clear and present danger of imminent violence" or that "the purported communication is used as a guise to disrupt lawful endeavors."  *In re Brown*, 9 Cal. 3d 612, 621 (Cal. 1973).  Although Section 415 is narrower in scope than the noise ordinance,[6] the

---

[6]     Plaintiff contends that because both Section 415 and the noise ordinance prohibit "unreasonable" noises, the court should construe the statutes to have the same scope.  However, the reason Section 415 is limited to noises that are either likely to incite violence or intended to disturb is that without such a construction, the statute is "so broad as to amount to a total prohibition on loud public speech."  *In re Brown*, 9 Cal. 3d 612, 620 (Cal. 1973).  By contrast, the noise ordinance does not apply to merely "loud" noises, but rather those that are "unreasonably disturbing … to people of ordinary sensitiveness" or "cause physical discomfort."  Such restrictions are clearly permissible under the First Amendment.  *See, e.g.*, *Kovacs v. Cooper*, 336 U.S. 77, 83 (1949) (finding that "disturbing noises" are "nuisances well within the municipality's power to control").

1   parties appear to agree that for purposes of a free speech analysis, the enforcement of both

2   statutes essentially constitutes a single act.

3          It is well-settled that "[m]embers of the public retain strong free speech rights when they

4   venture into public streets and parks, which have immemorially … been used for purposes of

5   assembly, communicating thoughts between citizens, and discussing public questions." *Pleasant*

6   *Grove City v. Summum*, 129 S. Ct. 1125, 1132 (2009) (citations omitted).  Nevertheless, the

7   government may impose reasonable restrictions on the time, place or manner of speech in a public

8   forum.  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  Such restrictions must be (1)

9   content-neutral; (2) narrowly tailored to serve a significant governmental interest; and (3) leave

10  open ample alternative channels of communication.  *One World One Family Now v. City &*

11  *County of Honolulu*, 76 F.3d 1009, 1012 (9th Cir. 1996) (citing *Ward*, 491 U.S. at 791).  The

12  government bears the burden of showing that its regulation of speech is permissible.  *See Deegan*

13  *v. City of Ithaca*, 444 F.3d 135, 142 (2d Cir. 2006) (citing *United States v. Doe*, 968 F.2d 86, 90

14  (D.C. Cir. 1992)).

15         As an initial matter, there is no evidence that plaintiff was arrested based on the content of

16  his speech.  Plaintiff does not dispute Officer Bayani's testimony that he "wasn't paying attention

17  to [plaintiff's] content," but rather to "the volume and what was happening around him."  Bayani

18  Depo. at 66:8-10.  There is also no merit to plaintiff's contention that the noise ordinance is

19  content-based on its face because it exempts some "speakers," including trash collectors and street

20  sweepers.  Even if the sounds generated by such entities qualify as "speech," the exemption is

21  plainly "speaker-based," not content-based.  *Reed v. Town of Gilbert*, 587 F.3d 966, 977 (9th Cir.

22  2009); *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1077 (9th Cir. 2006) ("That the

23  law affects plaintiffs more than other speakers does not, in itself, make the law content based.").

24  In addition, Officer Bayani clearly provided adequate alternatives for communication by offering

25  plaintiff the opportunity to continue preaching at a lower volume or a different location.  *See, e.g.*,

26  *Mastrovincenzo v. City of New York*, 435 F.3d 78, 101 (2d Cir. 2006) ("The requirement that

27  ample alternative channels exist does not imply that alternative channels must be perfect

28  substitutes for those channels denied to plaintiffs by the regulation at hand.").

1     The dispute thus turns on whether defendants' conduct was narrowly tailored to serve a

2  significant government interest.  While the City has a significant interest in "protecting its citizens

3  from unwelcome noise," *Ward*, 491 U.S. at 791, "the 'narrowly tailored' standard does not tolerate

4  a time, place, or manner regulation that … burden[s] substantially more speech than necessary to

5  achieve its goal." *Deegan*, 444 F.3d at 143.  Where protected speech is implicated, determining

6  whether the enforcement of a noise ordinance is constitutional requires a "fact specific and

7  situation specific inquiry." *Id.* at 142.  As the Supreme Court has explained, "[a]lthough a silent

8  vigil may not unduly interfere with a public library, making a speech in the reading room almost

9  certainly would.  That same speech should be perfectly appropriate in a park.  The crucial question

10  is whether the manner of expression is basically incompatible with the normal activity of a

11  particular place at a particular time." *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972).

12     In support of their position, defendants rely on *Costello v. City of Burlington*, 632 F.3d 41

13  (2d Cir. 2011) and *Rosenbaum v. City & County of San Francisco*, 484 F.3d 1142 (9th Cir. 2007).

14  In *Costello*, a street preacher was cited under an ordinance banning "loud or unreasonable noise"

15  while preaching "at the top of his stentorian voice" on a pedestrian mall in Burlington, Vermont.

16  *Costello*, 632 F.3d at 44.  The preacher brought a First Amendment claim against the police, and

17  the district court granted summary judgment for the officers on qualified immunity grounds.  On

18  appeal, the Second Circuit found that the record lacked evidence of "the character and

19  environment of the area in which the ordinance was enforced," and remanded the case for findings

20  as to "the activities and noise level that are 'usual and customary' in the space where the alleged

21  violation occurred." *Costello v. City of Burlington*, 329 Fed. Appx. 330, 331 (2d Cir. 2009).

22     The defendants then supplemented the record with affidavits characterizing the area as a

23  "tranquil" place with "negligible" vehicle traffic "where people go to walk and talk, or enjoy an

24  outdoor meal, without having to raise their voices to be heard." *Costello v. City of Burlington*, 708

25  F. Supp. 2d 438, 446 (D. Vt. 2010).  The district court also found that the preacher's voice

26  "dominated the marketplace" from more than 350 feet away, attracting a noise complaint from a

27  local business owner, and that while the neighborhood sometimes hosted loud public events, such

28  activities required permits from the city. *See id.* at 444, 448.  The court held that "taking into

1   account the 'nature and purposes of [the area], along with its ambient characteristics … [the

2   arresting officer] did not unreasonably burden [the preacher's] protected speech."  *Id.* at 447

3   (quoting *Doe*, 968 F.2d at 91).

4          The preacher again appealed, and this time the Second Circuit affirmed.  The court focused

5   on the findings that the plaintiff's voice could be heard from great distance, "was not subsumed in

6   any competing ambient noise" and "impinged on the use of the neighborhood by others with equal

7   claim."  *Costello*, 632 F.3d at 43.  The majority rejected the argument that a second remand was

8   necessary to determine whether nearby residents and business owners were *actually* disturbed,

9   reasoning that "polling" such individuals was unnecessary to "confirm that people who dwell [in

10  the area] may wish to open a window without hearing [the preacher] screaming, or that shop

11  owners or customers prefer a scream-free environment in order to focus on their dealings, or that

12  diners in outdoor restaurants want to listen to each other without having to talk over [the

13  preacher]."  *Id.* at 47-48.  The court succinctly concluded that the officer's application of the noise

14  ordinance was "reasonable and therefore constitutional."  *Id.* at 49.

15         The Ninth Circuit confronted a slightly different scenario in *Rosenbaum*.  There, police

16  officers cited, under Section 415, two Christian evangelists who used amplified sound to conduct

17  "religious outreach" in San Francisco, California.  *Rosenbaum*, 484 F.3d at 1163.  The evangelists

18  claimed, among other things, that the officers lacked probable cause to invoke Section 415 and

19  therefore violated the First Amendment.  After a bench trial, the district court explained its

20  findings as follows:

21         At the time of the citation … plaintiff Rosenbaum was using amplified sound in a
           mixed residential/commercial neighborhood after 9:00 p.m. He did not have a
22         permit to use amplified sound. Officer Mark Lundin, a police officer on vehicle
           patrol, heard the sound from a block away with his windows closed, responded
23         and asked Rosenbaum to turn the sound down. Approximately fifteen minutes
           later, Officer Lundin was dispatched on a noise complaint, at which time the
24         complainant, Joe Narvid, signed a citizen's arrest card. Narvid reported that
           Rosenbaum was keeping his children awake and had refused to turn the sound
25         down when Narvid requested that he do so … Based on what was reported to him,
           [the officer] had probable cause to believe Rosenbaum continued to use
26         amplifiers, at a late hour and without the requisite permit, for purposes of vexing
           and annoying Narvid and not for the purpose of communication.
27
           ….
28

9

> At approximately 9:30 p.m. … at Broadway and Columbus Avenue, [plaintiff] Livingston was preaching using amplification and had no permit for such amplification. Officer Milan Kangrga, on patrol in the North Beach area, responded to a noise complaint and requested that Livingston turn down his sound, which he did. Officer Kangrga returned, again in response to a noise complaint, at which time the volume was loud, and the complainant, Harry Wamack, who, by his address as indicated in the police report, resides near that intersection, signed a citizen's arrest card. There is no indication of any encounter between the complainant and Livingston in this instance, however, or of the particular manner in which the complainant's peace was disturbed. Nevertheless, given Livingston's lack of permit, his knowledge of a complaint, and his increasing the volume of his amplifier to a high level once the police had left the scene, it cannot be said that Officer Kangrga had no reasonable cause to believe Livingston did so not to communicate but rather to annoy the individual who had seen fit to report him.

*Rosenbaum v. City & County of San Francisco*, No. 96-3409 MMC, 2005 U.S. Dist. LEXIS 963, at *52-54 (N.D. Cal. Jan. 12, 2005).

On appeal, the Ninth Circuit explained that for First Amendment purposes, "the question is whether a prudent person in the position of the officers who cited appellants would have believed that appellants were committing the offense of disturbing the peace under § 415, with the requisite specific intent to annoy." *Id.* In affirming the judgment below, the court reasoned that "[b]ecause [the plaintiffs were] on notice after the first warning that [their] volume was excessive, the district court could draw the permissive inference that [their] intent was to annoy or vex. No more is required to make a valid showing of probable cause." *Id.*

The court agrees that *Costello* and *Rosenbaum* are extremely helpful in analyzing the instant dispute. Both cases make clear that the rights of religious speakers do not trump those of people who live or work near public forums, and that courts can determine whether a noise ordinance is reasonably applied as a matter of law. However, they also highlight the inadequacy of the record currently before the court. Defendants' submissions indicate only that: (1) plaintiff's voice could be heard "clearly" from 70 feet away through an open window; (2) he attracted one noise complaint; (3) he preached for over an hour; and (4) sound "carries very well and echoes in downtown Santa Cruz." Bayani Decl. ¶ 5. Without any information about the activities and noise level typical of downtown Santa Cruz, such evidence is insufficient to show that plaintiff's volume

1   was unreasonable *under the circumstances*.  *Compare Costello*, 708 F. Supp. 2d at 446

2   (reasonable to restrict speech that could be heard from 350 feet away given the character of the

3   area) *and Rosenbaum*, 484 F.3d at 1162 (reasonable to restrict amplified speech that could be

4   heard from a block away with the windows closed after 9 P.M. in a mixed residential/commercial

5   area) *with Deegan*, 444 F.3d at 143 (unreasonable to restrict speech that could be heard from 25

6   feet away in a public square because it would prohibit "the sounds that typify the [area] and the

7   activities it is meant to facilitate") *and Doe*, 968 F.2d at 91 (unreasonable to restrict noise

8   exceeding 60 decibels at 50 feet in a park "exposed to every form of urban commotion - passing

9   traffic, bustling tourists, blaring radios, performing street musicians, visiting schoolchildren").

10          In fact, plaintiff's video shows that at the time of the incident, the downtown corridor was

11  filled with the sounds of traffic, music, clapping, and the voices of other people on the street.  Of

12  course, it is impossible to draw conclusions from the video about the typical noise level in the area

13  or the volume of the sounds in the background.  The video also says little about the kinds of

14  activities that typify the neighborhood—plaintiff's conduct would clearly be more appropriate in a

15  place where similar "soapbox" presentations and street performances are common.  Thus, although

16  the video does not compel a finding in plaintiff's favor, it makes it difficult to adopt defendants'

17  view that his arrest was "necessary to maintain the usual and customary decorum" of downtown

18  Santa Cruz.  *Costello*, 708 F. Supp. 2d at 447.

19          The court also rejects defendants' contention that under *Rosenbaum*, plaintiff's arrest was

20  constitutional simply because he refused to lower his voice after being advised of a noise

21  complaint.  First, like *Costello*, *Rosenbaum* requires an officer to determine whether a speaker's

22  conduct is objectively unreasonable.  *See Rosenbaum*, 484 F.3d at 1163 (noting that plaintiff

23  "disregarded the initial warning and maintained his volume at an *unreasonably* loud level so as to

24  prompt another complaint") (emphasis added).  As plaintiff's speech was unamplified, occurred

25  during daylight hours and required no permit, *Rosenbaum* does not govern this case.

26          Second, Officer Bayani did not indicate that he believed plaintiff intended to disturb the

27  reporting party or anyone else, but rather to "set up" the police.  *See* Bayani Decl. ¶ 12; *compare*

28  *Rosenbaum*, 2005 U.S. Dist. LEXIS 963, at *54 (police had probable cause to find the plaintiff

1  intended to "annoy the individual who had seen fit to report him").  This is an oversimplification.

2  It is undisputed that plaintiff had been preaching for an hour before Officer Bayani arrived.

3  Defendants also do not dispute that when plaintiff was asked to stop, he explicitly asserted what he

4  viewed as First Amendment rights and insisted that he would preach until he was either arrested or

5  left alone.  While this may have put Officer Bayani in a difficult position, it does not follow that

6  plaintiff's presentation was a "set up" or "*merely* a guise to disturb."  *In re Brown*, 9 Cal. 3d at 619

7  (emphasis added).[7]  "The First Amendment protects verbal criticism, challenges, and profanity

8  directed at police officers unless the speech is 'shown likely to produce a clear and present danger

9  of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'"

10  *United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001) (quoting *City of Houston v. Hill*,

11  482 U.S. 451, 461 (1987)).  Put another way, unless plaintiff's conduct was objectively disturbing,

12  his speech does not lose constitutional protection because he attracted a noise complaint or sought

13  to challenge the enforcement of the noise ordinance.

14  **i.    Qualified Immunity**

15       Defendants next argue that even if they are found to have violated plaintiff's free speech

16  rights, the officer defendants are entitled to qualified immunity because reasonable officers could

17  disagree on whether plaintiff's arrest was lawful.  "Qualified immunity protects government

18  officials from liability for civil damages insofar as their conduct does not violate clearly

19  established statutory or constitutional rights of which a reasonable person would have known.'"

20  *Tibbetts v. Kulongoski*, 567 F.3d 529, 535 (9th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S.

21  800, 818 (1982)).  A district court must decide the issue of qualified immunity as a matter of law

22  when "the material, historical facts are not in dispute, and the only disputes involve what

23  inferences properly may be drawn from those historical facts."  *Conner v. Heiman*, 672 F.3d 1126,

24  1131 (9th Cir. 2012) (citation omitted).  On the other hand, the court may not resolve the issue on

25  summary judgment where "historical facts material to the qualified immunity determination are in

26  dispute."  *Id.*

27

28       [7]    According to Santa Cruz Deputy Chief of Police Steven Clark, disturbing an "officer's peace" cannot support a citation under the noise ordinance.  Dkt. No. 24 (Clark Decl.) ¶ 4.

The court finds that material, historical facts are lacking here. As noted above, even with the video, the court has no information about the "usual and customary" activities and noise level in downtown Santa Cruz. *Costello*, 632 F.3d at 44. This is information that Officer Bayani, a 17-year veteran of the Santa Cruz Police Department, presumably had at the time of the arrest. *See* Bayani Decl. ¶ 2. But with no evidence in the record concerning the character of the area, the court cannot determine "whether it would be clear to a reasonable officer that [plaintiff's] conduct was unlawful." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *compare Costello*, 632 F.3d at 52 (finding qualified immunity appropriate where the arresting officer, a 22-year veteran, testified that the preacher's volume was "*not* typical, usual, or customary" for that location, and that he believed the yelling was disruptive for other people in the area) (emphasis in original).[8] Plaintiff's refusal to comply with a police order, without more, plainly does not justify an arrest for disturbing the peace. *Cf. Dirks v. Grasso*, 449 Fed. Appx. 589, 591-94 (9th Cir. 2011) (no qualified immunity for the arrest under Section 415 of a man who "interjected himself" into a pending personnel matter between a police officer and a cadet but did not threaten the officer with violence or use words likely to induce violence); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) ("Even if his conduct was not entirely deferential and obedient, defendants did not have a reasonable belief as a matter of law that Knox violated the disorderly conduct statute."). Accordingly, the court denies both motions without prejudice as to plaintiff's free speech claim against the officer defendants.

### ii.     Municipal Liability

The City may be held liable under Section 1983 only where one of its customs or policies caused the violation of plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In order to establish a policy or custom sufficient for *Monell* liability, plaintiff must show a constitutional violation resulting from: (1) an employee acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice  or

---

[8]     It is worth noting that the plaintiff in *Costello* also videotaped his interaction with police, yet the Second Circuit reversed a grant of qualified immunity because it found the record insufficient. *See Costello*, 632 F.3d at 43.

13

1   custom; or (3) an employee acting as a "final policymaker."  *Webb v. Sloan*, 330 F.3d 1158, 1164

2   (9th Cir. 2003).

3          The City argues that it is not liable for any alleged free speech violation because its official

4   policy requires an officer initiating an arrest pursuant to a noise complaint to examine the totality

5   of the circumstances to determine whether "the noise they are hearing is consistent with something

6   that could … reasonably result in a disturbance."  Clark Decl. ¶ 4.  Plaintiff does not dispute that

7   this is the City's official policy.  Nor does he point to any statements by the City's Rule 30(b)(6)

8   designee, Deputy Police Chief Steven Clark, suggesting that police officers are tacitly authorized

9   to conduct noise-related arrests without probable cause.  Although Deputy Chief Clark

10  acknowledged that he would expect Officer Bayani to arrest plaintiff if "this same situation occurs

11  again," Clark emphasized that an arrest would be appropriate only if "we have probable cause that

12  … [plaintiff's] behavior is causing a disturbance."  Millen Decl., Ex. C (Clark Depo.) at 90, 94.

13  Since this policy, properly enforced, comports with the constitution, plaintiff has failed to show

14  that a City policy was the "moving force" behind the alleged violation of his civil rights.  *Galen v.*

15  *County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007); *compare Hoye v. City of Oakland*, 653

16  F.3d 835, 850 (9th Cir. 2011) (finding police captain's testimony that the police department

17  enforced municipal ordinance in an unconstitutional manner sufficient to establish official policy).

18  The court therefore grants the City's motion for partial summary judgment as to plaintiff's free

19  speech claim.

20          **B.**     **Free Exercise Clause**

21          Plaintiff next alleges that his arrest violated the First Amendment's Free Exercise clause.

22  That provision prevents "governmental regulation of religious *beliefs* as such."  *Employment Div.*

23  *v. Smith*, 494 U.S. 872, 877 (1990) (emphasis in original).  However, the constitution "does not

24  relieve an individual of the obligation to comply with a valid and neutral law of general

25  applicability."  *Id.* at 879.  A neutral, generally applicable law "need not be justified by a

26  compelling governmental interest even if the law has the incidental effect of burdening a particular

27  religious practice."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531

28  (1993).

1    Plaintiff claims that the noise ordinance is not "generally applicable," and therefore must

2   survive strict scrutiny, because it exempts certain noises—those associated with garbage

3   collection, street sweeping and other public health and safety activities—but does not offer a

4   similar exemption for sounds related to the exercise of religion.  *See* S.C., Cal., Municipal Code §

5   9.36.025.  In other words, plaintiff believes that since the statute excludes some conduct, it must

6   also exclude religious conduct.

7    The court disagrees.  A law is not generally applicable when the government, "in a

8   selective manner, imposes burdens only on conduct motivated by religious belief."  *Stormans, Inc.*

9   *v. Selecky*, 586 F.3d 1109, 1134 (9th Cir. 2009) (citing *Lukumi*, 508 U.S. at 543).  The "selective

10   manner" analysis focuses on whether a law is "substantial[ly] underinclusive[]" with respect to the

11   interests it is intended to advance.  *Id.*  Here, plaintiff has produced no evidence that the

12   exemptions for health and safety-related activities have undermined the City's interest in curbing

13   excessive noise.  The court thus cannot conclude that the statute is underinclusive with respect to

14   its stated purpose.  *Cf. Stormans*, 586 F.3d at 1134 (finding that "narrow" exemptions in a law

15   requiring pharmacies to deliver medications were "a reasonable part of the regulation of pharmacy

16   practice, and their inclusion in the statute does not undermine the general applicability of the new

17   rules").

18    The court also rejects plaintiff's argument that the ordinance impermissibly allows

19   disparate "treatment of certain religious conduct and the analogous secular conduct that has a

20   similar impact on the regulation's aims."  *Lighthouse Inst. for Evangelism, Inc. v. City of Long*

21   *Branch*, 510 F.3d 253, 266 (3d Cir. 2007); *see also Fraternal Order of Police Newark Lodge No.*

22   *12 v. City of Newark*, 170 F.3d 359 (3d Cir. 1999) (applying strict scrutiny to regulation that

23   allowed police officers to grow beards for medical reasons but not religious reasons); *Blackhawk*

24   *v. Pennsylvania*, 381 F.3d 202 (3d Cir. 2004) (applying strict scrutiny to wildlife permitting

25   scheme that exempted zoos and nationally recognized circuses but not religious adherents).  Here,

26   the conduct exempted by the noise ordinance relates to the provision of basic government services,

27   not private activity.  *Compare St. Mark Roman Catholic Parish Phoenix v. City of Phoenix*, No.

28   09-1839 (D. Ariz. Mar. 3, 2010) (denying a motion to dismiss an as-applied challenge to a noise

1  ordinance exempting "pleasing melodies" broadcast from ice-cream trucks but not the sound of

2  church bells).  The statute thus does not favor secular behavior over "analogous" religious

3  behavior, but rather evinces the common sense notion that the government may engage in certain

4  activity that is off-limits to *all* private citizens.  Adopting plaintiff's logic would effectively elevate

5  religious actors above other private actors by, for example, requiring a law that allows police

6  officers to trespass on private property under exigent circumstances to contain a similar exception

7  for religious leaders who feel compelled to hold sermons in their neighbors' living rooms.  The

8  First Amendment plainly does not demand such a result.  *See Smith*, 494 U.S. at 877 (rejecting the

9  argument that the plaintiffs' "religious motivation for using peyote places them beyond the reach

10  of a criminal law that is not specifically directed at their religious practice, and that is concededly

11  constitutional as applied to those who use the drug for other reasons").

12       Last, the court finds unpersuasive plaintiff's contention that he raises a "hybrid rights"

13  claim subject to strict scrutiny because his allegations involve both free speech and free exercise

14  violations.  The hybrid rights doctrine, which is based on Supreme Court dicta, theoretically

15  applies where "a free exercise plaintiff [can] make out a 'colorable claim' that a companion right

16  has been violated."  *Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999).  The Ninth Circuit has

17  recently noted that the doctrine has been "widely criticized" and that "no court has ever allowed a

18  plaintiff to bootstrap a free exercise claim in this manner."  *Jacobs v. Clark County Sch. Dist.*, 526

19  F.3d 419, 440 n. 45 (9th Cir. 2008); *see also Kissinger v. Bd. of Trs. of Ohio State Univ.*, 5 F.3d

20  177, 180 (6th Cir. 1993) ("We do not see how a state regulation would violate the Free Exercise

21  Clause if it implicates other constitutional rights but would not violate the Free Exercise Clause if

22  it did not implicate other constitutional rights."); *City of Hialeah*, 508 U.S. at 566-67 (Souter, J.,

23  dissenting) (explaining why doctrine is "ultimately untenable" because it would create an

24  exception "so vast as to swallow the … rule").  The court thus declines plaintiff's invitation to

25  break new constitutional ground here.

26       Accordingly, the noise ordinance is subject to rational basis review.  The rule is valid if it

27  is rationally related to a legitimate governmental purpose.  *See Gadda v. State Bar of Cal.*, 511

28  F.3d 933, 938 (9th Cir. 2007).  To challenge a law under this standard, "[t]he burden is on the one

16

1  attacking the legislative arrangement to negative every conceivable basis which might support it."

2  *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (alteration in original) (internal quotation marks

3  omitted).  Because plaintiff has failed to show that the noise ordinance is not rationally related to

4  the City's legitimate interest in curbing excess noise, his claim under the free exercise clause is

5  deficient as a matter of law.  The court grants defendants' motion for partial summary judgment as

6  to this claim.

7  **2.      FOURTH AMENDMENT**

8       Plaintiff's Fourth Amendment claim is based on the argument that his arrest was

9  unsupported by probable cause.  "The test for probable cause is whether facts and circumstances

10  within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable

11  caution, to believe, in the circumstances shown, that the suspect has committed, is committing or

12  is about to commit an offense."  *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005)

13  (citation omitted).

14       As noted above, both the noise ordinance and Section 415, when used to restrict otherwise

15  protected speech based solely on its volume,[9] require an officer to reasonably believe that the

16  noise level "exceeds what is usual and customary in a particular setting."  *Costello*, 632 F.3d at 46

17  (quoting *Deegan*, 444 F.3d at 143).  For the reasons already discussed, the court cannot determine

18  whether Officer Bayani's could reasonably make such a finding at the time of plaintiff's arrest, but

19  holds that any alleged violation did not result from official policy or practice.  The court therefore

20  denies both motions without prejudice as to this claim, except for the City's motion under *Monell*,

21  which is granted.

22  **3.      FOURTEENTH AMENDMENT**

23       Plaintiff last contends that the noise ordinance violates the Fourteenth Amendment because

24  it is void for vagueness, overbroad, and denies him equal protection.  The court considers each

25  claim in turn.

26       **A.      Vagueness**

27  _____

28       [9]   Defendants do not argue that plaintiff's arrest was justified because he created a clear and
present danger of immediate violence.

1    "It is a basic principle of due process that an enactment is void for vagueness if its

2    prohibitions are not clearly defined." *Grayned*, 408 U.S. at 108.  Laws must give a "person of

3    ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act

4    accordingly." *Id*.  A vague law both "impermissibly delegates basic policy matters to policemen,

5    judges, and juries for resolution on an ad hoc and subjective basis" and leads "citizens to 'steer far

6    wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked."'

7    *Id.* at 108-09 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)).

8    Specifically, plaintiff attacks the language restricting "unreasonably disturbing" noises

9    "which are not necessary in connection with an activity which is otherwise lawfully conducted."

10   S.C., Cal., Municipal Code § 9.36.020.  As he sees it, this language is unconstitutionally vague

11   because while he "thinks that his volume level is reasonable and necessary to reach his audience,

12   … someone else will think that it is not."  Dkt. No. 32 at 7.

13    The court agrees that the ordinance fails to pass constitutional muster.  While the

14   prohibition on "unreasonably disturbing" noises establishes an objective standard, the "necessary"

15   exemption is not similarly tethered to any identifiable criteria.  Indeed, defendants have cited no

16   authority, and the court has found none, upholding similar language against a vagueness

17   challenge.  *See also Jim Crockett Promotion, Inc. v. City of Charlotte*, 706 F.2d 486, 489 (4th Cir.

18   1983) (portion of noise ordinance barring "unnecessary" noise is unconstitutionally vague);

19   *Fratiello v. Mancuso*, 653 F. Supp. 775, 790 (D.R.I. 1987) (ordinance barring "unnecessary noises

20   . . . which are physically annoying to persons, . . . or which are injurious to the lives, health, peace

21   and comfort of the inhabitants of the city" is unconstitutionally vague); *Dae Woo Kim v. New

22   York*, 774 F. Supp. 164, 170 (S.D.N.Y. 1991) (invalidating prohibition on "unnecessary" noise).

23   Defendants argue that the exemption is not vague because it applies only to the provision

24   of public services.  It is true that the ordinance's second sentence states: "As used in this section,

25   'lawfully conducted activities' shall include, but not be limited to, any and all activities conducted

26   by the city for public health, safety or welfare purposes."  However, construing the "necessary"

27   exemption to cover *only* health and safety activities would render Section 9.36.025, which

28   excludes such activities from the reach of the ordinance all together, almost entirely superfluous.

18

1    "We try to avoid, where possible, an interpretation of a statute that renders any part of it

2    superfluous and does not give effect to all of the words used by [the legislature]." *Bosley Med.*

3    *Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005).

4          In addition, Officer Bayani's statement that given the proximity of the crowd, he "did not

5    think [plaintiff] *needed* to give his presentation that loudly," strongly suggests that the Santa Cruz

6    police understand the "necessary" exemption to cover First Amendment conduct.  Bayani Decl. ¶ 5

7    (emphasis added).  Simply put, Officer Bayani appears to have believed that even if plaintiff's

8    volume was "unreasonably disturbing," his speech could not be restricted if it was "necessary" to

9    achieve a lawful end.  This is consistent with the declaration of Deputy Police Chief Steven Clark,

10   who indicated that when making an arrest under Section 415, officers must "determine what

11   volume is reasonably necessary to communicate the message the speaker is trying to deliver."

12   Dkt. No. 24 (Clark Decl.) ¶ 5.  The court therefore construes the necessary exemption to cover any

13   lawful activity, including public speech.  So construed, the provision clearly invites "resolution on

14   an ad hoc and subjective basis," and is thus unconstitutional.  *Grayned*, 408 U.S. at 108.

15         "[T]he unconstitutionality of a part of an Act does not necessarily defeat . . . the validity of

16   its remaining provisions."  *United States v. Jackson*, 390 U.S. 570, 585 (1968).  Nonetheless, the

17   court may not strike part of the ordinance, leaving the remainder intact, if the invalid provision is

18   "so interwoven with others, that it cannot reasonably be presumed that the legislature intended the

19   statute to operate otherwise than as a whole."  *Moore v. Fowinkle*, 512 F.2d 629, 632 (6th Cir.

20   1975).  Because the noise ordinance is conjunctive, prohibiting only those noises that are both

21   unreasonably disturbing *and* unnecessary, the court must assume that lawmakers intended the

22   regulation to operate as a whole.  *Compare Jim Crockett*, 706 F.2d at 489 (striking prohibition on

23   "unnecessary" noise but not "unreasonable" noise where the terms were disjunctive).  The court

24   concludes that Section 9.36.020 is invalid in its entirety, and grants plaintiff's motion as to this

25   claim.[10]

26

27   _____

     [10]   The parties do not address whether the individual officers are liable for enforcing an
28   ordinance the court now holds to be unconstitutionally vague.  Typically, qualified immunity
     would apply under such circumstances.  *See Grossman v. City of Portland*, 33 F.3d 1200, 1209

### B.    Overbreadth

While the "necessary" clause is impermissibly vague, the court rejects the contention that it also renders the noise ordinance overbroad.  A statute is unconstitutionally overbroad if it includes within its prohibitions constitutionally protected conduct.  *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972).  As noted, the ordinance prohibits only noises that are both unreasonably disturbing and unnecessary.  Thus, rather than restricting speech "delivered in a moderate tone, or even a whisper, so long as it annoys another person," *Dae Woo Kim*, 774 F. Supp. at 170, the ordinance applies only to objectively intrusive sounds.  If anything, the problem with the ordinance is not that it encompasses protected speech, but that it vests police officers with unfettered discretion to exempt speech which could otherwise be constitutionally prohibited.  The court thus concludes that the overbreadth doctrine does not apply.

### C.    Equal Protection

Plaintiff last argues that the noise ordinance violates equal protection because it "gives special privileges to favored generators of noise;" i.e., providers of government services.  Dkt. No. 16 at 16.  The court is not persuaded.  As the sounds produced by garbage trucks and street sweepers are not speech, the "classifications" of which plaintiff complains do not require strict scrutiny.  *See Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 743 (9th Cir. 2011) (equal protection claim brought by member of a non-suspect class is subject to rational basis review unless the fundamental right of free speech is implicated).  Under rational basis review, an exemption enacted to facilitate the provision of health and safety-related activities easily survives.[11]  *Cf. One World One Family Now v. City & County of Honolulu*, 76 F.3d 1009, 1013 (9th Cir. 1996) ("Cities have a substantial interest in protecting the aesthetic appearance of their communities …").  Defendants' motion for summary judgment as to this claim is granted.

---

(9th Cir. 1994) ("An officer who acts in reliance on a duly-enacted statute or ordinance is ordinarily entitled to qualified immunity.").  However, as this question has not been briefed, the court does not reach the issue of qualified immunity with respect to this claim.

[11]   In its staff report, the City Council explains that it adopted the exemption because it had occasionally received noise complaints related to early-morning garbage collection and wanted to make it "unequivocally clear" that the noise ordinance did not apply to such activities.  *See* Dkt. No. 31 (City Council Agenda Report, Nov. 18, 2003) at 7.

20

**4.      STATE LAW CLAIMS**

Both parties also move for summary judgment on plaintiff's state law claims, which are based on the allegation that plaintiff was wrongly arrested in violation of his constitutional rights. Because of the factual issue described above, the motions are likewise denied without prejudice.

**5.      INJUNCTIVE RELIEF**

Plaintiff seeks an injunction preventing defendants from "interfering with plaintiff's lawful speech or arresting him under similar circumstances." Compl. at 6. A law enforcement agency "may be enjoined from committing constitutional violations where there is proof that officers within the agency have engaged in a persistent pattern of misconduct." *Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992) (citing *Allee v. Medrano*, 416 U.S. 802, 815-16 (1974)). In *Allee*, the Supreme Court upheld a permanent injunction restraining further unconstitutional conduct by various Texas state law enforcement officials who had unlawfully threatened, detained, confined, and physically assaulted union leaders engaged in organizing efforts. *Id.* at 804-05, 815. In affirming the district court's injunction, the Supreme Court found that the constitutional violations "were not a series of isolated incidents but a prevailing pattern" of police misconduct. *Id.* at 809.

Given the court's finding that the noise ordinance is unconstitutional on its face, it is appropriate to enjoin its enforcement. *See, e.g.*, *Dupres v. City of Newport*, 978 F. Supp. 429, 435 (D.R.I. 1997) (enjoining municipality from enforcing noise ordinance found to be unconstitutionally vague). The court declines, however, to contemplate a broader injunction in this case. Apart from plaintiff's claim that he was once with a friend who was inappropriately cited by unnamed Santa Cruz police officers while street preaching, there is no evidence whatsoever of a pattern of police misconduct. Plaintiff does not dispute that police department policy requires officers initiating noise-related arrests to first determine that the noise level is objectively unreasonable. Thus, to the extent that the officer defendants are found to have violated plaintiff's rights, there is no reason to believe his injuries were not an "isolated incident." *Allee v.*, 416 U.S. at 809; *see also Rizzo v. Goode*, 423 U.S. 362 (1976) (nineteen constitutional violations in a year's time, by only a small percentage of the police, did not warrant injunctive relief); *cf.*

1   *Wilkins-Jones v. County of Alameda*, 2010 U.S. Dist. LEXIS 52834, at *7 (N.D. Cal. May 27,

2   2010) ("The speculative nature of any future arrest, particularly an illegal arrest, is insufficient to

3   warrant standing for injunctive relief.").

4          Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's

5   claim for injunctive relief except insofar as he seeks to enjoin enforcement of the noise ordinance

6   in its current form.

7                                         **III. ORDER**

8          For the foregoing reasons, the court orders as follows:

9      (1) Plaintiff's motion for summary judgment is granted as to his due process claim, denied

10         without prejudice as to his free speech, Fourth Amendment and state law claims, and

11         denied with prejudice as to his free exercise, overbreadth and equal protection claims.

12     (2) The Officer Defendants' motion for summary judgment is granted as to plaintiff's free

13         exercise, overbreadth and equal protection claims, and denied without prejudice as to

14         his free speech, Fourth Amendment, due process and state law claims.

15     (3) The City's motion for summary judgment is granted as to all claims except plaintiff's

16         due process and state law claims.

17     (4) The City is permanently enjoined from enforcing the noise ordinance as currently

18         drafted.

19     (5) Defendants' motion for summary judgment on the remainder of plaintiff's claim for

20         injunctive relief is granted.

21

22   DATED:  September 28, 2012

23

24                                                 _____

25                                                 Ronald M. Whyte
                                                   United States District Judge

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28